IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CORILYNN WALLACE,<br><br>Defendant. | Case No. 16-cr-00744-DKW-9<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 37 months into her 64-month sentence, Corilynn Wallace ("Defendant") asks the Court to reduce her sentence to time served because her medical conditions, coupled with the COVID-19 pandemic, present extraordinary and compelling circumstances warranting such a reduction. For the reasons set forth below, the Court disagrees, and the motion is DENIED.

## RELEVANT BACKGROUND

On June 8, 2017, Defendant pled guilty to methamphetamine distribution-related offenses. Dkt. No. 196. On January 30, 2019, this Court sentenced Defendant to 64 months' imprisonment and 5 years of supervised release. Dkt. Nos. 617, 618. The Court imposed a below-guidelines sentence because of, among other things, Defendant's minimal criminal history, evident remorse, cooperation, and productivity during pre-trial incarceration. Dkt. No. 619 at 3.

On August 27, 2020, Defendant, proceeding pro se, filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release motion"). Dkt. 777. Defendant argues her medical conditions—obesity, asthma, depression, post-traumatic stress disorder, and, possibly, sleep apnea and hypertension—along with a large outbreak of COVID-19 at FMC Carswell, where Defendant is housed, and the difficulty of protecting herself from infection at that facility, constitute extraordinary and compelling circumstances warranting release. On September 4, 2020, while her compassionate release motion was pending, Defendant simultaneously pursued compassionate release at the Bureau of Prisons ("BOP") level by administratively appealing her warden's refusal to grant relief similar to that requested here. Dkt. No. 780 at 4; *see also* Dkt. 783 at 2.

On September 11, 2020, the Government filed a response opposing any sentence reduction. Defendant, through counsel, filed a reply to the present motion on September 25, 2020. On September 30, 2020, the Court issued an order holding the motion in abeyance until the BOP administrative appeal process was complete or Defendant affirmatively waived any further right to administrative appeal. Dkt. No. 788. On October 2, 2020, Defendant advised the Court she had waived any further right to administrative appeal concerning this matter. Dkt. No. 791.

This order follows.

## **LEGAL STANDARD**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)).  Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the [BOP] to bring a motion" on her behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. §3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

*See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement).  The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance.  *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07

3

(9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

As discussed below, Defendant has now met the exhaustion requirement. However, Defendant has failed to show an extraordinary and compelling reason warranting a sentence reduction.

### I. Exhaustion is Mandatory

Section 3582(c)(1)(A) provides, in relevant part, that a "court may not modify a term of imprisonment once it has been imposed" except "upon motion of the defendant *after* the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such request by the warden . . ., whichever is earlier, . . . ." *See* 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

That *statutory* language establishes a "mandatory" exhaustion requirement, similar to that in 42 U.S.C. § 1997e(a)[1] of the Prison Litigation Reform Act

---

[1] 42 U.S.C. Section 1997e(a) provides:
> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

4

(PLRA), and "suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *See, e.g.*, *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) (holding that "mandatory exhaustion statutes like [Section 1997e(a) of] the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion"); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required."), *superseded by statute on other grounds as stated in Booth*, 532 U.S. at 740–41.

The coronavirus pandemic does not exempt inmates from the exhaustion requirement. Thus, although Section 3582(c)(1)(A) allows an inmate to directly petition a court for compassionate release, it mandates that before a court may modify a sentence an inmate must exhaust administrative relief in one of the two ways allowed by the statute.

### A.   Section 3582(c)(1)(A) Exhaustion Requirements

Under Section 3582(c)(1)(A), the first step in the exhaustion process is to submit a compassionate release request to the warden. *See also* 28 C.F.R. §571.61(a). There are then two ways an inmate may satisfy the statutory exhaustion requirement. *First*, if thirty days "lapses" from the warden receiving the request. 18 U.S.C. § 3582(c)(1)(A). This allows the warden a reasonable time

5

to respond to the inmate's request, but it also prevents the warden from unduly delaying the inmate relief by simply refusing to respond.[2]

*Second*, if the warden denies the request within the thirty-day period, the inmate must "fully exhaust[] all administrative rights to appeal." 18 U.S.C. §3582(c)(1)(A); *see, e.g.*, *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020). To exhaust all administrative rights to appeal, the inmate must follow "the Administrative Remedy Procedure (28 C.F.R. part 542, subpart B)." 28 C.F.R. § 571.63(a).

### B. Defendant Has Met the Exhaustion Requirement

The Government argues (and Defendant appears to agree) that, as a statutory matter, a motion for compassionate release is ripe for the Court's decision even if the warden responded to the inmate's request within thirty days, and the inmate has not exhausted all administrative rights to appeal through the internal BOP process. Dkt. No. 780 at 9–10 (citing in support *United States v. Harris*, — F.3d —, 2020 WL 5198870 (3d Cir. July 20, 2020)); Dkt. No. 783 at 2–3. In other words, the Government argues that there can be parallel proceedings whereby a district court

---

[2]*See United States v. Kazanowski*, No. 15-cr-00459-DKW, 2020 WL 3578310, at *4 (D. Haw. July 1, 2020) (explaining that "[r]equiring exhaustion fulfills two important objectives: (1) protecting administrative agency authority, especially in matters involving the agency's discretionary power or . . . its special expertise; and (2) promoting judicial efficiency by affording the agency an opportunity to decide the issue, whereby the controversy may well be mooted" (citing *McCarthy*, 503 U.S. at 145) (internal quotation marks omitted)).

and the BOP are *at the same time* deciding upon the appropriateness of compassionate release for an inmate. The Court disagrees.

This Court—like many others—has held an inmate may file a motion for compassionate release before the inmate has met the exhaustion requirement. *See, e.g.*, *Kazanowski*, 2020 WL 3578310, at *4 (acknowledging that if the exhaustion requirement is met while the motion is pending, it is ripe for decision); *see also United States v. Drummondo-Farias*, No. 12-CR-00174-JMS, 2020 WL 2616119, at *4 (D. Haw. May 19, 2020) (same); *United States v. Hinz*, No. 2:12-CR-00294-TLN, 2020 WL 2319924, at *1 (E.D. Cal. May 11, 2020) (same). But while such a motion may be filed before the exhaustion requirement is met, it is not ripe for decision by a court until exhaustion has occurred. That is a hallmark of exhaustion—completing review of the same issue at one level before review at the next occurs.

BOP's Administrative Remedy Program (*i.e.*, the mechanism used to exhaust all administrative rights to appeal) ("ARP") as it relates to compassionate release motions allows for the following: (1) consideration by a warden in response to a request; (2) ***twenty days*** for the inmate to appeal that decision; (3) ***thirty days*** for the Regional Director to respond to the appeal; (4) ***thirty days*** for the inmate to appeal that decision; and (5) ***forty days*** for the General Counsel to make a final decision.  28 C.F.R. §§ 542.13–542.18; 28 C.F.R. § 571.61(a)(1).

7

Defendant began the administrative process by submitting her brief COVID-19-related request on July 31, 2020 (Dkt. No. 780-2), only to have the FMC Carswell warden deny it the same day (Dkt. No. 780-3).  Defendant responded by appealing the warden's denial on September 4, 2020 (Dkt. No. 780-1 at 2; *see also* Dkt. No. 783 at 2),[3] with that appeal being denied by the BOP Regional Director on September 12, 2020.  *See* Dkt. No. 788.  On October 2, 2020, Defendant relinquished any right to continue with the ARP by waiving her right to any further administrative appeal.  Dkt. No. 791.  Accordingly, Defendant has exhausted her administrative remedies, and her compassionate release motion is ripe for decision by the Court.

## II.     **<u>Extraordinary and Compelling Reasons</u>**

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons" and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission").  As this Court has explained, it is bound by the Commission's Commentary in U.S.S.G. § 1B1.13 regarding what constitutes an "extraordinary and compelling" reason warranting a sentence reduction.  *See, e.g.*,

---

[3]The Court notes that Defendant's appeal of the warden's July 31, 2020 denial appears to have been untimely.

*United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, *2–*4 (D. Haw. July 17, 2020).[4]

Accordingly, the Court applies the following framework to determine whether COVID-19 presents extraordinary and compelling reasons to grant a reduction in sentence:

> [A]n inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover."

*Kazanowski*, 2020 WL 3578310, at *7 (alterations in original) (quoting U.S.S.G. § 1B1.13 & cmt. n.1(A)). Defendant fails on the last two elements.

The Court recognizes Defendant's medical records show she currently suffers from obesity, asthma, depression, post-traumatic stress disorder, and, possibly, sleep

//

//

---

[4]Defendant's argument to the contrary, that this Court may independently determine what "other reasons" constitute "extraordinary and compelling" reasons warranting a sentence reduction, *see* Dkt. No. 783 at 5, was discussed at length and expressly rejected in *Aruda*. 2020 WL 4043496, at *2–5; *see also United States v. Kealoha*, No. 04-CR-00265-DKW, 2020 WL 3735773, *5–6 (D. Haw. July 6, 2020). To the extent the Second Circuit has held to the contrary, *see United States v. Brooker*, 2020 WL 5739712 (2d Cir. Sept. 25, 2020), this Court does not agree.

apnea and hypertension. Dkt. No. 780-4 at 8, 9, 10, 14, 16, 18, 24, 25, 45–47, 58–61, 69. Thus, Defendant has medical conditions recognized by the CDC as placing her at greater risk of a severe reaction to COVID-19.[5]

But as the court has often explained, demonstrating a high risk of becoming seriously ill from COVID-19 requires showing not only that a defendant is a member of an at-risk group, but also that there is "a high risk of contracting the virus because of the number of positive COVID-19 cases at the facility where [the defendant] is housed." *See, e.g.*, *United States v. Rodrigues*, No. 16-CR-00529-DKW, 2020 WL 5351029, *5 (D. Haw. Sept. 4, 2020). Defendant must explain how the *current* circumstances at *her facility* indicate a high likelihood of contracting the virus. Further, she must offer specific information demonstrating that should she contract the virus, she could not provide self-care at her facility such that she would not be expected to recover. *See* U.S.S.G. § 1B1.13 cmt. n.1(A).

Defendant is correct that there was—at one time—a "severe outbreak" of COVID-19 at FMC Carswell.[6] *See* Dkt. No. 777 at 1; Dkt No. 780 at 16. Over just

---

[5] *See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness – People with Certain Medical Conditions*, CDC (updated Oct. 6, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 7, 2020) (listing obesity, with a body mass index of 30 or higher, and a history of smoking as putting someone at an increased risk of severe illness if they contract COVID-19; listing asthma and hypertension as potential increased risk factors).
[6] *See Covid-19 Outbreak Reported at Texas Medical Prison*, Washington Post (July 21, 2020), https://www.washingtonpost.com/health/covid-19-outbreak-reported-at-texas-federal-medical-

a few days, hundreds of inmates were infected with the virus, and six COVID-related inmate deaths have since been confirmed.[7]

But since the initial outbreak, it appears BOP has significantly contained the spread of the virus at FMC Carswell. As of October 7, 2020, just two inmates and three staff are testing positive for the virus.[8] This is down even from the ten active cases reported by the Government as recently as September 11, 2020 when it filed its opposition brief. Dkt. No. 780 at 16. Of course, this does not mean these conditions present no risk. Indeed, the risk at FMC Carswell and other BOP facilities may be more than nominal. But Defendant is tasked with presenting "extraordinary and compelling" circumstances, far from those that presently exist. In fact, contrary to Defendant's contention that "she is just as at risk as she ever was," Dkt. No. 783 at 13, the numbers prove that not to be the case.[9]

---

prison/2020/07/21/0ea173bc-cbb3-11ea-99b0-8426e26d203b_story.html (last visited Oct. 7, 2020).

[7]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020). On this public website containing the coronavirus-related data for BOP facilities, the BOP notes that it "update[s] the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-19 related deaths daily at 3:00 p.m." *Id.*

[8]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020).

[9]It is for this reason that Defendant's list of courts granting sentence reductions to inmates with obesity, Dkt. No. 783-5, is unpersuasive. Notably, Defendant fails to argue how any of the prison conditions in those cases—beyond the inmate's obesity—are analogous to those here. For instance, in *United States v. Barber*, 2020 WL 2404679 (D. Or. May 12, 2020), the inmate was indeed obese, *id.* at *4, but the court noted, "[o]f even greater concern . . . was the growing number of cases [at Defendant's facility]." *Id.* (emphasis added); *see also United States v. Handy*, 2020 WL 2487371 (D. Conn. May 14, 2020) (noting the "dozens of confirmed COVID cases" in defendant's facility). Further, all of Defendant's cases were decided in May 2020 or earlier, Dkt. No. 783-5, when less was known about the virus and less testing had been done at

Further, even if there was a more significant risk of Defendant contracting the virus at FMC Carswell, she has failed to demonstrate that if she were to contract COVID-19, her ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and she would "not [be] expected to recover." *See* U.S.S.G. § 1B1.13 n.1(A).  FMC Carswell is a medical facility.[10] While that alone is not conclusive, it suggests Defendant is in precisely the place able to provide her with the care she needs for her various medical conditions should she contract the virus.  Certainly, Defendant has presented no evidence to the contrary.

Because Defendant has not carried her burden of showing that there are "extraordinary and compelling reasons" justifying her early release under 18 U.S.C. § 3582(c)(1), she is not entitled to a sentence reduction.

### III.    Section 3553(a) Factors & Risk of Danger to the Community

Even assuming, *arguendo*, that Defendant established an extraordinary and compelling reason justifying a sentence reduction, the Court must consider any such reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a)

---

correctional facilities.  Regarding testing at least, this is no longer true; BOP reports testing 1294 inmates at FMC Carswell alone.  *COVID-19 Coronavirus: COVID-19 Cases, BOP*, https://www.bop. gov/coronavirus/ (last visited Oct. 7, 2020).  In fact, Defendant herself has been tested four times since July 2020, each with negative results.  Dkt. No. 780-4 at 88–97.
[10]*Legal Resource Guide to the Federal Bureau of Prisons*, BOP at 26 (2014), https://www.bop.gov/resources/pdfs/legal_guide.pdf ("FMC Carswell serves as the major medical and psychiatric referral center for female inmates. All specialty areas of medicine are available at FMC Carswell, through in-house staff and community-based consultant specialists").

and determine Defendant is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." *See* 18 U.S.C. §3582(c)(1)(A); U.S.S.G. § 1B1.13.

Considering the Section 3553(a) factors, the Court finds Defendant's 64-month sentence is, as it was at sentencing, "sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public." *See* 18 U.S.C. §3553(a)(2). Defendant argues the "pandemic changes the punishment analysis"—increased health risk plus extensive lockdowns to contain spread were not considered at sentencing—and that Defendant's sparse criminal history and being safety valve eligible are factors counseling in favor of a sentence reduction. Dkt. No. 783 at 14–15. The latter two facts were considered at Defendant's sentencing and are not new. Dkt. No. 613 at 33–35; Dkt. No. 619. And while the Court appreciates the difficulties, especially while incarcerated, of living with the COVID-19 pandemic, as discussed in the previous section, the fact of the pandemic does not at this time, for this Defendant, in her facility, change this Court's analysis concerning the appropriateness of her sentence.

Regarding danger to the community, the Court agrees with Defendant that her case is distinguishable from *Aruda*, 2020 WL 4043496, where the Court denied

13

relief, in part, because of the defendant's extensive criminal history. The Court acknowledges that Defendant has a sparse criminal history, and her crime was not one of violence. *See* Dkt. No. 613 at 1–2, 15–17. Defendant's history of substance abuse notwithstanding, *see* Dkt. No. 613 at 17–22, the Court finds that Defendant would likely not pose a threat to the community if released. However, as Defendant has not demonstrated an extraordinary and compelling reason warranting a sentence reduction, this finding is immaterial to the Court's decision.

## CONCLUSION

For the reasons set forth herein, Defendant's motion for compassionate release, Dkt. No. 777, is DENIED.

IT IS SO ORDERED.

DATED: October 7, 2020 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

---

*United States of America v. Corilynn Wallace*, Criminal No. 16-00744-DKW-9,
**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**